IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


CAROL M.,[1]                                                      No. 6:23-cv-00090-JR

          Plaintiff,                               OPINION & ORDER

      v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

          Defendant.


RUSSO, Magistrate Judge:

      Plaintiff Carol M. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income under the Social Security Act ("the Act"). All parties have consented to allow a Magistrate Judge to enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c).

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION & ORDER

ECF No. 17. For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

## PROCEDURAL BACKGROUND

Born in September 1964, plaintiff alleges disability beginning January 1, 2018. Tr. 257-88. Plaintiff alleged disability due a variety of conditions, including problems with her back, shoulders, joints, and mental health. Tr. 321. Her application was denied initially and upon reconsideration. Tr. 149-55, 158-63, 165-66. On February 16, 2022, plaintiff appeared at an administrative hearing before Administrative Law Judge ("ALJ") Mark Triplett. Tr. 33-74. On April 27, 2022, the ALJ issued a decision finding plaintiff not disabled. Tr. 12-32. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

Initially, the ALJ found that plaintiff met the insured status requirements of the Act through March 31, 2022. Tr. 17. At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since January 1, 2018, the alleged onset date. Tr. 17. At step two, the ALJ determined the following impairments were medically determinable and severe: a right shoulder rotator cuff tear with tendinopathy, degenerative disc disease with neuropathy, a depressive disorder, and a trauma disorder. Tr. 18. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 18.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how her impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except:

2 – OPINION & ORDER

>    she can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. She can
>    occasionally kneel, crouch, and crawl. She can occasionally reach overhead with
>    the right, dominant, upper extremity. She can frequently, but not constantly,
>    handle and finger bilaterally. She can perform simple, routine tasks, and can
>    tolerate occasional interaction with the general-public.

Tr. 21.

At step four, the ALJ determined the claimant was capable of performing her past relevant work as a cleaner housekeeper. Tr. 25. The ALJ therefore found plaintiff not disabled from January 1, 2018, the alleged onset date, through April 27, 2022, the date of the ALJ's unfavorable decision. Tr. 26.

## DISCUSSION

Plaintiff argues the ALJ committed three harmful errors. She contends the ALJ erred by (1) discounting her testimony without a clear and convincing reason for doing so, (2) improperly evaluating the medical opinions of Jason Johnston, PA, and Jennifer Ferraez, LCSW, and (3) rejecting plaintiff's daughter's competent lay testimony. For the reasons that follow, the Court finds the ALJ did not err, and affirms.

**I.    Symptom Testimony**

Plaintiff contends the ALJ erred by discrediting her testimony about the extent of her mental and physical health issues. Pl.'s Br., ECF No. 13 at 5-13. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The

reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At the hearing, plaintiff testified to constant back pain. Tr. 47-48. She could sit for ten minutes before needing to move around. Tr. 48-49. She had to constantly rotate from side to side when lying down. Tr. 48. She could stand for five minutes before experiencing severe pain and requiring a heating pad or ice pack on her back. Tr. 48. She had to hang onto the shopping cart and stretch when grocery shopping. Tr. 48-49. She used a heating pad when she drove home from the store. Tr. 49. At times, she had to lie down and take Tramadol because of her pain, which made her sleepy. Tr. 49-50. She was unable to reach overhead or to the side with her dominant right arm. Tr. 50-51. She testified to depression and suicidal thoughts. Tr. 52. She had problems with focus, memory, and concentration. Tr. 52-53. She kept to herself and avoided being around too many people. Tr. 53. She used a cane outside of her home; it was not prescribed by a medical provider. Tr. 53-54. She experienced pain with vacuuming, sweeping,

and mopping; she had family members assist her with those tasks. Tr. 55-56. Her anxiety was "through the roof." Tr. 55.

In written testimony, plaintiff reported she had difficulty standing, walking, and sitting for long periods. Tr. 356, 382. She also struggled with bending, reaching, bending, squatting, and standing up. Tr. 356, 382. She could not lift much weight due to her hip, back, and arms. Tr. 356. When asked how she spent a typical day, plaintiff described alternating between daily activities and rest breaks, with some time spent elevating her feet due to nerve pain. Tr. 357, 363, 382, 407. She provided childcare for her grandsons and helped her mother with shopping and reading her mail. Tr. 357, 383; *see also* Tr. 408 ("When my pain levels are to[o] high, my daughter does it for me."). The oldest grandson helped care for the younger children when plaintiff needed to rest. Tr. 383. Plaintiff's daughter or grandson reminded her to take her medications and to shower. Tr. 358, 384, 409. Plaintiff had pain when raising her right arm, which impacted her ability to get dressed. Tr. 358. She had trouble standing to prepare meals. Tr. 358, 384. On a good day, she could do one or two household chores a day, with twenty- to thirty-minute rest breaks in between. Tr. 359. She needed friends and family members to help her maintain her home. Tr. 359; see also Tr. 383, 384, 410. She sometimes had to stay inside and rest with a heating pad all day due to higher pain levels. Tr. 359. She relayed that she could no longer do many of the activities she used to do, like riding horses, playing with her grandchildren, and watching movies at the theater. Tr. 360, 361, 387, 408, 412. Her impairments impacted her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember things, complete tasks, concentrate, and use her hands. Tr. 361; see also Tr. 387, 412. She lost concentration quickly and often. Tr. 361. She was exhausted all the time. Tr. 356. She napped for thirty to

thirty-five minutes once or twice a day. Tr. 378. She used a cane only on "very bad" nerve pain days. Tr. 388, 362. She experienced anxiety and depression. Tr. 407.

The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 22. However, the ALJ concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 22. Specifically, the ALJ found plaintiff's symptom allegations were inconsistent with objective medical evidence, plaintiff's treatment history, and that plaintiff's daily activities conflicted with her symptom allegations. Tr. 22.

The ALJ reasonably discounted plaintiff's allegations of limitations stemming from her shoulder and back pain as inconsistent with the record. Conflict with objective medical evidence is a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. § 416.929(c)(2). At the hearing, plaintiff testified about shoulder and back pain that affected her strength, mobility, and flexibility. *See, e.g.*, Tr. 47-54. Specifically, plaintiff alleged she could lift only 5 to 8 pounds, stand for only 5 to 10 minutes, and sit for only 10 minutes and that her impairments made it difficult to bend, reach, walk, squat, and raise her right arm. Tr. 48, 356, 358, 382, 412. In contrast to plaintiff's allegations about difficulty bending, reaching, and walking, the ALJ highlighted several physical exams showing plaintiff could rise from a sitting position without assistance, get up and down from the exam table without difficulty, rise slowly from squatting, walk in tandem normally, walk on heels and toes, stand on one foot, and move her extremities "easily," symmetrically, with "excellent" grip strength, and often with full range of motion. Tr. 22–23 (citing, e.g., Tr. 554, 572, 608, 795, 888). The ALJ found these normal physical exams also undermined plaintiff's allegations of postural sitting or standing limitations

6 – OPINION & ORDER

beyond what is included in light work. Tr. 22-23 (citing, e.g., Tr. 508, 520–21). These records all conflicted with plaintiff's allegations of more significant limitations and amount to substantial evidence supporting the ALJ's decision to discount plaintiff's testimony about the severity of her physical symptoms.

      The ALJ likewise supported the decision to discount plaintiff's mental health allegations with substantial evidence. At the hearing, plaintiff testified that she felt depressed all the time, had suicidal thoughts, could not concentrate, had memory problems, got frustrated when dealing with other people, and had anxiety. Tr. 52–53, 55. The ALJ contrasted these allegations with several mental status examinations during the relevant period showing plaintiff was alert, cooperative, and oriented and had normal affect with no signs of agitation, normal mood with no signs of anxiousness, normal attention, normal memory, normal concentration, good eye contact, clear speech, logical and goal-directed thought process, unremarkable thought content, and good insight and judgment. Tr. 23 (citing, e.g., Tr. 461, 508, 515, 521, 539, 543, 551, 554, 557, 560, 563, 566, 569, 579, 585, 607). These objective medical records all conflicted with plaintiff's testimony, and were substantial evidence the ALJ could rely upon when discounting plaintiff's subjective testimony.

      Plaintiff urges the Court to adopt a different interpretation of the record, but does not undermine the substantial evidence supporting the ALJ's decision. Specifically, plaintiff argues the ALJ "selectively rel[ied] on the essentially normal findings documented in the record." ECF No. 13, at 9–10. Plaintiff further argues the ALJ ignored electrodiagnostic testing from September 2020 showing "anecdotal evidence possibly consistent with peripheral neuropathy," a November 2021 MRI showing mild narrowing in L5-S1 level of the lumbar spine, a September 2021 x-ray of plaintiff's right shoulder showing mild osteoarthritis in the shoulder joints, and an

October 2021 MRI showing tears in plaintiff's rotator cuff tendons. Pl. Br., at 9-10 (citing Tr. 818, 1050, 1098, 1104). But the ALJ did in fact consider this evidence, finding plaintiff's musculoskeletal and neurological examinations revealed "normal posture, no deformity, intact cranial nerve function, a normal gait and station, excellent and equal bilateral grip strength, with intact reflexes, and muscle tone." Tr. 22–23. Plaintiff's arguments about these individual tests are an effort to have this Court re-weigh the evidence, which is beyond the scope of review. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ."). Even when there are two reasonable interpretations—plaintiff's and the ALJ's—the ALJ's interpretation must prevail. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."). Against that backdrop, even though plaintiff clearly interprets the evidence differently, she has not (and cannot) establish error by simply advancing a different interpretation of the medical evidence.[2]

---

[2] The ALJ also mentions plaintiff's allegedly "conservative treatment" for her physical and mental symptoms as a basis to discount her symptom testimony. Although conservative treatment can be a sufficient reason to discount a claimant's subjective testimony regarding the limitations caused by an impairment, *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007), the ALJ failed to provide a sufficiently specific explanation for why plaintiff's treatment regimen for either her physical or mental health symptoms was so "conservative." Tr. 23. Indeed, plaintiff underwent right shoulder arthroscopic debridement, acromioplasty, and rotator cuff repair during the relevant period. Tr. 1106, 1111. She also treated her mental health symptoms with "multiple [psychiatric] medications including nortriptyline, Celexa, Wellbutrin, fluoxetine, sertraline, Cymbalta, Zolpidem, lorazepam, propranolol, and Abilify." Tr. 23. This does not fit the mold of "conservative" treatment, and it was error for the ALJ to discount plaintiff's testimony on this basis.

The ALJ's error was harmless, however, because he identified two other sufficient bases to discount plaintiff's subjective symptom testimony. *See Molina*, 674 F.3d at 1115 (holding ALJ's error "harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record").

The ALJ also discounted plaintiff's subjective symptom testimony because it was inconsistent with her own statements about daily activities. Tr. 24. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021). A claimant need not be utterly incapacitated to receive disability benefits, however, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to her or her credibility).

The ALJ reasonably found several of plaintiff's reported daily activities clashed with her allegations about physical symptoms. To discount a plaintiff's testimony, an ALJ must cite daily activities that "meet the threshold for transferable work skills" or "contradict [a claimant's] testimony." *Orn,* 495 F.3d at 639. Although plaintiff alleged significant strength and mobility issues, the ALJ noted plaintiff also reported that she is able to care for plants, garden, perform her own personal care, prepare simple meals, clean the house, wash the dishes, do laundry, sweep, vacuum, mop, go places by walking and driving, and shop in stores. Tr. 24, 356–57, 359, 382, 384. The ALJ further noted plaintiff engaged in hobbies "every day for as long as [she] can,

9 – OPINION & ORDER

usually about 20–30 min[ute]s," traveled across the country with family, and played with and cared for her grandson. Tr. 360, 1040, 1106. Plaintiff's childcare responsibilities in particular conflicted with her allegations that she cannot lift more than 8 pounds and has difficulty bending, reaching, squatting, and performing other physical functional activities. Tr. 24. Because the ALJ reasonably cited several activities that conflict with plaintiff's allegations about the limitations her physical symptoms cause, this was another clear and convincing reason for the ALJ to rely upon to discount her testimony.

## II.    Medical Opinion Evidence

Plaintiff also argues the ALJ did not properly consider the medical opinions of Jason Johnston, PA, and Jennifer Ferraez, LCSW. Pl. Br, ECF No. 13 at 13-19. For claims filed on or after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. 20 C.F.R. § 404.1520c. Instead, the agency considers several factors. 20 C.F.R. § 404.1520c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

Under this framework, the ALJ must "articulate ... how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. § 404.1520c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R § 404.1520c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(3). "Even under the

new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

    *A. Jason Johnston, P.A.*

    In August 2021, the Agency referred plaintiff to PA Johnston for a consultative physical examination. Tr. 1122. Plaintiff reported back and hip pain that was unbearable when sitting or standing for too long. Tr. 1122. Her symptoms worsened with bending and with too much activity. Tr. 1122. Her symptoms were relieved by sitting down for about twenty minutes. Tr. 1122. She had difficulty picking up her one-year-old grandson. Tr. 1131. She could walk only short distances with frequent rest breaks. Tr. 1131. She was able to grocery shop for herself and to help care for her grandson. Tr. 1131. She experienced shooting pain from her wrists to her elbows. Tr. 1122. Her pain worsened with picking things up. Tr. 1122. Her symptoms were relieved by rest, heat, and ice. Tr. 1123. She had grasping difficulties. Tr. 1130. She also experienced neuropathy in her left leg and foot. Tr. 1123. Her symptoms worsened with standing or sitting for too long. Tr. 1123. She frequently had to change positions. Tr. 1130. Her typical daily activities consisted of trying to clean the house, taking care of her cat, and working in her flower beds. Tr. 1124. She endorsed bad neck and right shoulder pain. Tr. 1124. She was overwhelmed by anxiety and pain. Tr. 1124.

    PA Johnston's examination demonstrated positive bilateral straight leg tests, inability to hop on the right foot, and reduced flexion of the right hip. Tr. 1126-28. He assessed bilateral carpal tunnel syndrome, neuropathy, and osteoarthritis of the back and hips. Tr. 1130. PA Johnston further assessed that plaintiff could sit for twenty to thirty minutes before needing to change position. Tr. 1130. She could stand for twenty minutes before needing to sit. Tr. 1130.

11 – OPINION & ORDER

She could frequently lift/carry five pounds with the left hand and one pound with the right hand. Tr. 1130. She could occasionally lift/carry eight pounds with the left hand and five pounds with the right hand. Tr. 1130. She could frequently bend and grasp. Tr. 1130. She could occasionally squat, handle, and feel. Tr. 1130. She could constantly reach with the right hand and occasionally reach with the left hand. Tr. 1130. The ALJ was "not entirely persuaded" by PA Johnston's opinion. Tr. 24. He reasoned that "the significant lifting, handling, and feeling limitations outlined by the examiner, are not consistent with the objective testing during the evaluation, nor is his opinion consistent with the other evidence of record." Tr. 24.

      The ALJ adequately discussed the strength of the evidence underlying PA Johnston's opinion in the record when finding it not fully persuasive. Tr. 24. The supportability factor requires ALJs to consider the persuasiveness of a medical opinion based on how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support her or her medical opinion." 20 C.F.R. § 404.1520c(c)(1). The ALJ discounted PA Johnston's opinion because it was not well-supported and internally inconsistent. Tr. 24. The ALJ first emphasized that PA Johnston's objective testing found plaintiff had a normal range of motion in her neck, shoulders, wrists, hands, back, knees, ankles, and hips with some decreased range of motion in her right hip flexion and right elbow; a normal gait; full muscle strength; normal nerve sensation; and symmetrical reflexes Tr. 24, 1125–28. PA Johnston also found plaintiff was able to lift, carry, and handle light objects; was able to squat, rise from squatting, and rise from sitting without assistance; and "had no difficulty getting up and down from the exam table." Tr. 24, 1126. Finally, PA Johnston found plaintiff was able to fully extend her hand, make a fist, oppose her fingers, and pinch, grasp, and manipulate both small and large objects "without difficulty." Tr. 1124. The ALJ reasonably found these largely normal findings

undermined PA Johnston's assessment of extreme lifting, handling, and feeling limitations. In doing so, the ALJ sufficiently considered the supportability of PA Johnston's medical opinion when concluding it was poorly supported by explanation and objective medical evidence.

The ALJ also reasonably considered the inconsistency of PA Johnston's limitations with the overall medical record. The consistency factor requires the ALJ to assess medical opinions' alignment with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). The ALJ reasonably found several aspects of PA Johnston's opinion inconsistent with the record, and therefore not fully persuasive. Tr. 22. The ALJ explained "the other evidence of record showed a normal posture, no deformity, intact cranial nerve function, a normal gait and station, excellent and equal bilateral grip strength, with intact reflexes, and muscle tone." Tr. 24. The ALJ specifically cited medical records showing plaintiff had normal posture, normal gait, intact cranial nerve function, full motor strength, normal reflexes, "excellent" grip strength, and no swelling or deformity in her joints, all of which conflicted with PA Johnston's more severe limitations. Tr. 22–23 (citing, e.g., Tr. 508, 520–21, 539, 543, 546–47, 579, 790, 795). Finally, the ALJ noted that PA Johnston relied on plaintiff's subjective allegations, which he supportably discounted earlier in the opinion. *See Tommasetti*, 533 F.3d at 1041 ("An ALJ may reject a [ ] physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted[.]"). Plaintiff did not contest this basis in her brief, and therefore forfeited any challenge to this rationale the ALJ offered for discounting PA Johnston's opinion. *See Carmickle*, 533 F.3d at 1161 n.2. In sum, the ALJ adequately considered these objective findings, and reasonably concluded they were inconsistent with several of the limitations in PA Johnston's opinion.

13 – OPINION & ORDER

### B. Jennifer Ferraez, LCSW

In November 2021, Ms. Ferraez completed a written statement in which she reported treating plaintiff for posttraumatic stress disorder ("PTSD") since August 2019. Tr. 937, 941. Ms. Ferraez noted plaintiff was prescribed Sertraline, which caused drowsiness, fatigue, and confusion. Tr. 937. Ms. Ferraez assessed marked limitation in plaintiff's ability to ask for help when needed, handle conflict with others, and state her own point of view. Tr. 938. She assessed extreme limitation in plaintiff's ability to work at an appropriate and consistent pace, complete tasks in a timely manner, ignore or avoid distractions while working, work close to or with others without interrupting or distracting them, sustain an ordinary routine and regular attendance at work, and work a full day without needing more than the allotted number or length of rest periods during the day. Tr. 938.

Ms. Ferraez also noted that plaintiff needed verbal reminders to take her medication, and that she had created a highly structured environment for herself by eliminating all but minimally necessary contact with the world outside her living space. Tr. 939. Ms. Ferraez opined that increased demands would lead to symptom exacerbations and a deterioration in plaintiff's functioning. Tr. 940. She further opined that plaintiff was unable to function outside the home or a more restrictive setting without direct psychological support. Tr. 940. Ms. Ferraez wrote,

> [Plaintiff] is unable to leave the house except for mental health and medical appointments and to buy groceries. She does not engage socially aside from immediate family. She is only able to do the bare minimal to maintain her home and activities of daily living. She does not engage in recreational activities.

Tr. 940. Ms. Ferraez reported that she had based her opinion on direct observations and treatment, patient report, functional testing, her professional experience/background, historical medical records, psychological/psychiatric evaluations, and counseling/therapy records. Tr. 941. Ms. Ferraez testified to similar limitations at the hearing. Tr. 60-63. The ALJ was "not

persuaded" by Ms. Ferraez's opinion. Tr. 25. He reasoned that "the marked and extreme limitations outlined are wholly inconsistent with the medical evidence of record, which demonstrates the claimant can live independently and take care of her grandchildren. Those activities would be nearly impossible at the level of debilitation expressed by Ms. Farraez." Tr. 25.

The ALJ reasonably considered both the supportability and consistency of Ms. Ferraez's opinion when finding it unpersuasive. Regarding supportability, the ALJ noted Ms. Ferraez's opinion was less persuasive because it was internally inconsistent. For example, Ms. Ferraez indicated on the one hand that plaintiff had no problem following a schedule or maintaining attendance but then opined that she was unable to leave the house except for appointments. Tr. 25, 940. Similarly, the ALJ pointed out that Ms. Ferraez indicated plaintiff had no problem adapting or managing herself but then inconsistently explained plaintiff needed verbal reminders to eat, shop, or pay her bills. Tr. 939–40. Concerning consistency, the ALJ further found Ms. Ferraez's assessment of marked and extreme limitations in plaintiff's ability to leave the house, interact with others, complete tasks, maintain pace, sustain a routine, and work a normal day without needing more than standard rest periods clashed with the record. Tr. 938–40. As the ALJ pointed out in the decision, plaintiff reported she can provide her own personal care, provide childcare for her grandsons, go outside daily and "love[s] being outside," engage in hobbies, including weekly puzzles, leave the house by herself by walking or driving, travel across the country with family, and complete household tasks, including household cleaning and yard work. Tr. 24, 356–60, 382–86, 408–11. Plaintiff also frequently reported she has no problem getting along with family, friends, neighbors, and others. Tr. 361, 387, 412. In fact, plaintiff did not even initially identify a mental impairment as a basis for her disability claim. See Tr. 80, 91, 102, 127.

In sum, the ALJ reasonably found the evidence, including plaintiff's own reports, inconsistent with Ms. Ferraez's assessment of marked and extreme limitations in areas involving plaintiff's ability to interact with others, persist, and maintain pace.

### III.  Lay Witness Testimony

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine,* 574 F.3d at 694. But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id*. Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122.

Plaintiff's daughter reported that plaintiff helped watch her children while she was at work but had a hard time doing basic things, like picking up the sixteen-pound baby and

16 – OPINION & ORDER

remembering to feed the children. Tr. 415-16, 422. She needed help to care for the baby. Tr. 416. Plaintiff needed reminders to eat, to take care of personal needs/grooming, and to take her medications. Tr. 416, 418. She did not cook. Tr. 418. She tried doing dishes and laundry but could not do much for long. Tr. 418. She had to take long breaks because of pain and exhaustion. Tr. 419. It could take her days to fully complete these tasks, and she usually needed help to finish them. Tr. 419.

The ALJ provided a specific, germane reason for discounting plaintiff's daughter's testimony. The ALJ found the lay "description of the claimant's limitations inconsistent, which renders her statement less persuasive." Tr. 25. As the ALJ noted when considering plaintiff's similar testimony, plaintiff's daughter's descriptions of her limitations are inconsistent with several of plaintiff's daily activities. This was a sufficient reason to discount plaintiff's symptom testimony, and it suffices as a germane reason to discount plaintiff's daughter's allegations as well.

## CONCLUSION

For the reasons given above, the Commissioner's decision is affirmed and this case is dismissed.

IT IS SO ORDERED.

DATED this 19th day of November, 2024.

                                        /s/ Jolie A. Russo
                                        Jolie A. Russo
                                        United States Magistrate Judge